Case 1:24-mj-00278-MAU   Document 1-1   Filed

Case: 1:24-mj-00278
Assigned to: Judge Upadhyaya, Moxila A.
Assign Date: 8/29/2024
Description: COMPLAINT W/ ARREST WARRANT

**STATEMENT OF FACTS**

Your affiant, ▮▮▮▮▮▮▮, is a Special Agent assigned to the Charlotte Field Office of the Federal Bureau of Investigation (FBI). Currently, I am tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As a Special Agent with the FBI, I am authorized by law or by a Government agency to engage in or supervise the prevention, detection, investigation, or prosecution of a violation of Federal criminal laws.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of

violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

### *Evidence Linking JUSTINA NICOLE GUARDINO to the Assault on the U.S. Capitol*

Justina Nicole Guardino ("GUARDINO") is a 32 year old resident of North Carolina.

The FBI initiated an investigation of GUARDINO based on information suggesting she was present during the attack at the U.S. Capitol on January 6, 2021.

Based on the received information, your affiant conducted research on GUARDINO and identified a Wilmington, North Carolina resident by that name. Your affiant also reviewed North Carolina Division of Motor Vehicles records for GUARDINO, including her photograph.

On August 2, 2022, law enforcement agents interviewed GUARDINO at her home address in Wilmington, NC. During the interview, GUARDINO confirmed that she had traveled to Washington, DC to attend the January 6, 2021 rally held by then-President Donald Trump. The Defendant initially claimed that after the rally concluded, she returned to her hotel room and remained there for the rest of the day.

Subsequently, GUARDINO admitted to law enforcement agents that after returning to her hotel room, she saw televised news coverage of the ongoing riot at the U.S. Capitol Building, and left her hotel to walk down to the U.S. Capitol Grounds. GUARDINO claimed that by the time she reached the U.S. Capitol Grounds, there were no fences or other barriers blocking her path, and that she saw no weapons or acts of violence or chanting about then-Vice President Michael Pence or then-Speaker of the House Nancy Pelosi.  GUARDINO stated that she saw one broken window at the U.S. Capitol Building, but never saw or smelled any tear gas.

GUARDINO told law enforcement agents that she had entered the U.S. Capitol Building, and that she found the interior of the building to be peaceful.  She further claimed that she felt her path through the building was akin to a tour, since she had believed at the time that the U.S. Capitol Building was open to the public. However, when asked by law enforcement agents, GUARDINO confirmed that she had never visited the U.S. Capitol Building before January 6, 2021, had not gone through any security screening or metal detectors before entering the U.S. Capitol Building that day, and had never been asked to show identification before entering the U.S. Capitol Building.  Based on those recollections, GUARDINO admitted to law enforcement agents that her entry into the U.S. Capitol Building on January 6, 2021 had not been a public tour.

Law enforcement agents then showed GUARDINO eight images taken from footage captured by security cameras located inside the U.S. Capitol Building on January 6, 2021. After reviewing the photos, GUARDINO admitted the blonde-haired woman identified by the yellow circles in **Images 1 and 2** (below) was her during her time inside the U.S. Capitol Building on January 6, 2021.





According to records obtained from Verizon, on January 6, 2021, in and around the time of the incident, the cellphone associated with a particular phone number ending in 6340 (the "6340 Number") was identified as having utilized a cell site consistent with providing service to a geographic area that included the interior of the United States Capitol building. The 6340 Number is associated with GUARDINO in public records.

Based on GUARDINO's interview and identification of herself in Images 1 and 2 above, your affiant reviewed open source images and video footage taken on January 6, 2021 from outside of the U.S. Capitol Building. During this review, your affiant identified GUARDINO as an individual on the Upper West Terrace of the U.S. Capitol Building subsequent to the breach of the bike rack barrier surrounding the west side of the restricted area of the U.S. Capitol Grounds around 12:53 p.m. **Images 3 and 4** below show GUARDINO, identified by a yellow circle, on a ramp leading to the area immediately surrounding the Senate Wing Door of the U.S. Capitol Building. As seen in Images 3 and 4 and consistent with GUARDINO's appearance in Images 1 and 2 above, the person I have identified as GUARDINO is attired in a black jacket with a light-colored cloth object protruding from her left jacket pocket, light greyish colored pants, and a black wrap or scarf around her neck, and is carrying a black cell phone (see in her right hand in Images 3 and 4).





Additionally, as seen in **Image 5** below, while on the ramp near the Senate Wing Door GUARDINO (circled in yellow) was in close proximity to a dark-haired woman (circled in red) wearing a crew-neck sweatshirt, a blue beanie with the word "TRUMP" on the front, and a pair of sunglasses with rainbow lenses resting on top of the beanie. This second woman is identified here to facilitate locating GUARDINO in subsequent images.



Image 5

Your affiant also reviewed closed circuit television (CCTV) footage from inside of the Senate Wing Door area of the U.S. Capitol Building (taken from the same vantage point as Images 1 and 2 above), which showed the individual I have identified as GUARDINO entering the U.S. Capitol Building through a window adjacent to the Senate Wing Door at approximately 3:15 p.m., stepping on a piece of wooden furniture in order to make her way down to the floor of the building. After entering, GUARDINO, still attired in a black jacket with a light-colored cloth object protruding from her left jacket pocket, light greyish colored pants, and a black wrap or scarf around her neck, can be seen holding her phone aloft, as though filming her surroundings and fellow rioters. **Images 6 through 8** below show GUARDINO, circled in yellow, entering the building

6

and raising her phone. As seen to the right of GUARDINO in Images 6 and 7, the dark-haired woman in the blue beanie and sunglasses accompanied GUARDINO into the building.







*Image 8*

    As GUARDINO continued to photograph and/or record the area around the Senate Wing Door, uniformed USCP and MPD officers arrived in the area, closing the window GUARDINO had just climbed through minutes earlier and directing rioters to exit the building. GUARDINO and the dark-haired woman in the blue beanie and sunglasses exited via the Senate Wing Door at approximately 3:17 p.m. Both women can then be seen re-entering the building together, alongside other rioters, via the Senate Wing Door at approximately 3:21 p.m. **Images 9 and 10** below show GUARDINO, circled in yellow, re-entering the U.S. Capitol Building for a second time, via the Senate Wing Door, with the woman in the beanie and sunglasses following her.





After re-entering the building, CCTV footage shows that GUARDINO, still holding up her phone as though filming or photographing her surroundings, attempted to walk south from the area of the Senate Wing Door towards the Crypt, but was blocked by another group of uniformed police officers, forcing her to turn around and return to the area around the Senate Wing Door. **Images 11 and 12** below show GUARDINO, circled in yellow, after she returned to the Senate Wing Door area.





*Image 12*

CCTV footage shows that GUARDINO eventually exited the U.S. Capitol Building via the Senate Wing Door at approximately 3:24 p.m. **Image 13** below shows GUARDINO, circled in yellow, as she is about to leave the building via the Senate Wing Door, with the dark-haired woman wearing the beanie and sunglasses beside her.



Open source footage taken by another rioter on January 6, 2021 also shows GUARDINO, in the same attire as seen on the CCTV footage described above, leaving the Senate Wing Door. **Image 14** below shows GUARDINO, circled in yellow, just prior to her exiting the building, with her female companion with the blue beanie and sunglasses visible on the left edge of the image.



*Image 14*

Based on the foregoing, your affiant submits that there is probable cause to believe that GUARDINO violated 18 U.S.C. § 1752(a)(1) and (2), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions. For purposes of Section 1752 of

Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

      Your affiant submits there is also probable cause to believe that GUARDINO violated 40 U.S.C. § 5104(e)(2)(D) and (G), which makes it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.



Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 29th day of August 2024.

                                                                         _____
                                                                          MOXILA A. UPADHYAYA
                                                                          U.S. MAGISTRATE JUDGE